

FILED
MAR 23 2015
IN THIS OFFICE
Clerk U.S. District Court
Greensboro, N.C.
By

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. _15CV 252_

EPIC TECH, LLC,

                Plaintiff,

v.

STHR GROUP, LLC, and PRYOR
DEVELOPMENT COMPANY, INC.,

                Defendants.

**VERIFIED COMPLAINT**

NOW COMES Epic Tech, LLC and alleges as its complaint against the Defendants the following:

1. Plaintiff Epic Tech, LLC ("Epic") is a limited liability company existing by virtue of the laws of the State of Delaware that has its principal place of business located in the State of Georgia.

2. Epic is engaged in the business of software development and licensing, specializing in the creation and licensing of electronic sweepstakes promotions. Epic Tech develops, owns, and licenses software throughout the United States where permitted by law.

3. Defendant STHR Group, LLC ("STHR") is a corporation existing by virtue of the laws of the State of North Carolina that has its principal place of business located in Guilford County, North Carolina.

4. STHR operates a business located at 2806 Randleman Rd. Unit J, Greensboro, NC 27406 under the assumed names of "Randleman Vapor Depot" and/or "Randleman Road Business Center."

5. Defendant Pryor Development Company, Inc. ("Pryor") is a corporation existing by virtue of the laws of the State of North Carolina that has its principal place of business located in Rockingham County, North Carolina.

6. Pryor operates a business located at 9597 US Highway 29 Business in Ruffin, NC near the intersection of Lick Fork Creek Road and US 29 Business under the assumed name of "Ruffin Retail" formerly known as "Hwy 29 Feed Store," which is identified by an orange flag outside that reads "SWEEPSTAKES."

7. This suit arises out of the illegal copying, distribution, modification, and display for profit by the Defendants of Epic's sweepstakes software, trademarks, and original works without the express or implied consent of Epic or any of its predecessors in interest and/or licensors.

8. Defendants allegedly sell internet time for consumption by the general public at their businesses described above.

9. In conjunction with their operations, Defendants offer a server-based, electronic sweepstakes software system known generically as "Falcon." Falcon is a pirated copy of sweepstakes software owned and distributed by Epic known as "Legacy."

2

## JURISDICTION AND VENUE

10. This action arises under the copyright and trademark laws of the United States, 17 U.S.C. § 101 *et seq.* and 15 U.S.C. § 1051 *et seq.*

11. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338. Additionally, this Court has jurisdiction over the state law claims alleged herein under 28 U.S.C. §§ 1338 and 1367, because these claims are joined with related claims arising under the laws of the United States and because the claims are so related to the federal claims that they form part of the same case and controversy.

12. This Court has personal jurisdiction over the Defendants because the Defendants have directly solicited, transacted and is doing business within this judicial district. In addition, the Defendants' unlawful conduct is taking place within at least this judicial district.

13. Venue in this district and division are proper pursuant to 28 U.S.C. §§ 1391 and 1400(a).

## THE EPIC SWEEPSTAKES SYSTEM

14. Epic is the owner and/or exclusive licensee, from Red Rock Investments, LLC ("Red Rock"), of the Legacy software system, including the Community Prize promotional system (the "Epic System"), and all of the intellectual property assets associated therewith. Attached hereto as Exhibits A, B, and C and incorporated

3

herein, are the assignments of certain copyright and trademark rights of Red Rock to Epic and an exclusive software license.

15.    Beginning in or about 2004, Red Rock developed a server-based, electronic sweepstakes software system that has been used across the United States where permitted by law. Using the system, businesses are able to market, promote and sell high-speed Internet time and other products using Plaintiff's promotional sweepstakes software.

16.    The sweepstakes software licensed by Epic is designed to be hosted on a local network consisting of: (1) a server, (2) a point of sale terminal, (3) computer terminals for use by customers, and (4) a management terminal ("the System"). The software licensed by Epic is used by each hardware component of the System in order to facilitate the proper functioning of the system, thus it is an integrated system comprised of multiple individual parts.

17.    The core of the Epic System is a complex, proprietary system of server-based software that contains the foundational structure for the functioning of the entire sweepstakes system including, but not limited to, highly confidential mathematical formulas developed by Red Rock to conduct the sweepstakes. The code forming this core of the product is never seen by patrons or customers participating in the sweepstakes. It is not even available to businesses that license use of the sweepstakes system. Access to the server is only available to high security level employees of Epic, via sophisticated password protection mechanisms.

4

18. In addition to the underlying core software, the Epic System includes a variety of games, which have proprietary names, themes, images, sounds, and even music. Each of these themes, images, and sounds were created and designed exclusively by or on behalf of Red Rock. These "sub-games" all rely upon the core software program to function.

19. Red Rock designed its core software, mathematical formulas, and games from scratch, making it entirely unique in the marketplace. Given its development from scratch, the Red Rock software includes certain unique and/or hidden features that are a result of the way it was developed and designed. Some of these features are visible to Epic's customers (store owners, managers, cashiers, etc.) and/or game participants. Other characteristics of the software are only visible in the code and database structure itself, and can only be accessed by a trained software engineer with access to and knowledge of the code. Red Rock designed these measures specifically to safeguard its intellectual property and to prevent illegal copying or piracy of the software.

20. With access to and knowledge of the server-based core software, it is possible to design new games with different images or modify the images of existing games, while still relying upon the same game design and mathematical formulas contained in the core software. The games are considered "skins" that provide the color, animation and sound to a customer while the core software is the "brain" that actually runs the games and performs the complex calculations necessary for

the entire system to function. Accordingly, it is possible for games that only slightly resemble, or even do not resemble, the games in the Epic System to actually be functioning using the underlying core source code of the Epic System.

21.    Through the Epic System, store customers ("Customers") purchase Internet Time in pre-determined increments from a cashier at the point-of-sale terminal. The cashier activates the Customer's time in an account established for the Customer, which is stored on the network server.

22.    Using the Epic System, each Customer is given a unique personal identification number ("PIN") associated with their account. The Customer accesses his or her account and Internet Time at a computer terminal linked to the System using the PIN.

23.    The Epic System uses computer databases containing a finite pool (or pools) of sweepstakes entries stored on the network server. Upon creation of the pool, certain entries are associated with a prize value, while other entries are associated with a zero prize.

24.    The creation and allocation of the database pools is a function of the source code. The pools are stored on the System server until accessed by a terminal.

25.    Customers who purchase Internet Time are given the opportunity to open or "reveal" a specified number of entries based on their purchase. Each entry that is revealed opens one pre-determined sweepstakes entry from the finite pool of entries on the System server. Once the results of an entry have been revealed to a

6

Customer, it is permanently removed or flagged as drawn from the finite pool. Software located on the server controls the flagging of entries and administration of the prize pools.

26. Within the Epic System, a Customer can determine whether his or her entries are winning or not by revealing the sweepstakes entries at a computer terminal connected to the System.

27. To reveal entries, the Customer begins using the terminal by selecting the game he or she wishes to use, identified by various names and logos on a homepage, and then selecting the number of sweepstakes entries he wishes to reveal. Below is a true and accurate depiction of a screen in a game developed by Red Rock known as "Ritzy Kitty":



28. The Customer reveals the prize(s) associated with their sweepstakes entry/ies, if any, by pressing the "Reveal" button depicted on the screen.

29. After the Customer selects the "Reveal" option, the database selects an entry from the pre-determined finite pool and the entry results are displayed. The game may display a graphical depiction of the winning or losing nature of the entry. The

7

images displayed during the game are controlled by the nature of the entry in the finite, pre-determined pool.

30. The games include original and copyrightable works, including art work that is owned and/or exclusively licensed by Epic.

31. In addition to the games described above, the Epic System integrates a second promotional system, known as "Community Prize."

32. The Community Prize system allows Customers to participate in a separate sweepstakes pool and works in conjunction with the first sweepstakes system.

33. The Community Prize system uses a countdown eligibility timer for its sweepstakes pool. Below is true and accurate a depiction of the Community Prize eligibility timer icon used by the Epic System:



34. The Epic System is an integrated combination of elements that all function together to deliver the Customer experience described above, and Epic and/or Red Rock have devoted substantial time and resources to the design of the System as a whole in addition to each individual element. Each component of the System is interconnected to the other elements. The point of sale terminal, server, and individual computer terminals each contain software that is unique and proprietary to the Epic System in order for the System to function as designed.

8

35.	Central to the design of the Epic System is the core software housed on the server, which contains game functionality elements, mathematical algorithms, prize pools, and related data required for the system to function.

36.	Customer experience of the Epic System is primarily driven by the images displayed on computer terminals, which are connected to the central server.

37.	Competition is fierce in the industry of computer-based sweepstakes. Competitive advantage in the industry is largely dependent upon the quality of the Customer experience using the sweepstakes software. As a result, Epic Tech and/or Red Rock have devoted substantial resources and time to the invention of images and game themes used by the software.

9

## INTELLECTUAL PROPERTY RIGHTS OF THE EPIC SYSTEM

38. All of the software for the Epic System, including the images, sounds, and functions of the software, is an original work of authorship, and Epic is the sole and exclusive holder of all rights in and to the software, including all elements of the Epic System.

39. One of the games developed by Red Rock and available through the Epic System is entitled "Lucky Duck." In connection with images specially designed to be used in Lucky Duck, Epic is the owner of multiple copyright registrations, including Copyright Registration Nos. VA0001779211 (bell), VA0001779200 (cherries), VA0001745520 (lucky duck game icons and screens), SR0000680525 (lucky duck music), PA0001828303 (lucky duck screen displays), and VA0001779212 (watermelon). Epic also owns Copyright Registration No. VA0001943259 for the game Ritzy Kitty. These copyright registrations are collectively referenced herein as the "Epic Copyright Registrations". True and accurate copies of the copyright registration information for these copyrights are attached hereto as Exhibit D and incorporated herein.

40. Further, in connection with the Lucky Duck game, Epic owns, uses, and has registered on the Principal Register of the United States Trademark Office as the following mark ("Lucky Duck Registered Logo"):

|  | U.S. Trademark Registration No. 3,853,565, registered on September 28, 2010 | Gaming equipment, namely, gaming machines |
| --- | --- | --- |

41. Epic and/or Red Rock have invested substantial sums of money in developing and promoting its Lucky Duck trademarks as well as the underlying goodwill associated therewith. In addition, Epic currently uses the Lucky Duck trademarks in commerce in connection with gaming systems.

42. Epic is also the holder of U.S. Trademark Registration No. 3,782,626 for the name REEL CATS ("Reel Cats Registered Trademark"). The application for registration was filed on May 14, 2009 and the trademark registration was issued on April 27, 2010.

43. Epic and/or Red Rock have invested substantial sums of money in developing and promoting its REEL CATS trademarks as well as the underlying goodwill associated therewith.

44. Copies of the federal trademark registration for the Lucky Duck Registered Logo and the Reel Cats Registered Trademark are attached hereto as Exhibit E and incorporated herein.

45. The LUCKY DUCK name, the Reel Cats Registered Trademark, the Lucky Duck Registered Logo, and the following logos (the "Reel Cats Logo" and the "Community Prize Logo," respectively) have been used by Epic and/or Red Rock

11

in connection with gaming systems, wherein these marks are collectively referenced as the Epic Trademarks:





46. The Epic Trademarks are distinctive and as a result of licensing of electronic sweepstakes systems by Epic and/or Red Rock, the Epic Trademarks have developed and now have a secondary trademark meaning to purchasers and users of sweepstakes systems so that they have come to be recognized by the relevant consuming public as indicating Epic as the source of such systems and games. As shown by Exhibit C, Epic also holds an exclusive license to any rights in the unregistered trademarks discussed herein.

47. In addition to the foregoing, Epic is the holder of numerous other copyright registrations, registered trademarks, and patents related to and invented as components of the Epic System.

## DEFENDANT'S INFRINGING ACTIVITIES

12

48. Defendants use a sweepstakes software system known generically as "Falcon" which is nearly an exact copy of the Epic System.

49. Falcon is comprised of the same elements as the Epic System: (1) a server, (2) a point of sale terminal, (3) computer terminals for use by Customers, and (4) a management terminal.

50. Just as in the Epic System, Customers of the Defendants purchase Internet Time from a cashier at the point-of-sale terminal. The cashier activates the Customer's time in an account established for the Customer, which is stored on the network server.

51. Just as in the Epic System, each Customer of the Defendants is given a unique personal identification number ("PIN") associated with their account. The Customer accesses his or her account and Internet Time at a computer terminal linked to the System using the PIN.

52. Customers of the Defendants are given a receipt at the time of their purchase that shows their PIN. The formatting of receipts given to customers by Defendants is virtually identical to those created in the Epic System.

53. Since the time Defendants opened for business, they have offered games identified as "Lucky Ducky" and "Reel Cats," which, upon information and belief, are illegal pirated copies of Epic's games. Upon information and belief, other games such as Lady Temptress, Vegas Safe, and Monster Mash Millions are games from the Epic System that have been slightly modified. None of the Epic System

13

software was properly obtained by the Defendants from Epic or from an authorized distributor of Epic's software.

54. The Falcon software being used by the Defendants includes identical or substantially similar images, themes, and functions as the Epic System.

55. Upon information and belief, the core software used by the server to administer the sweepstakes databases and allocate prizes is the same as the Epic System. Further, upon information and belief, the software used by the management terminal of the Falcon system is identical in appearance and function as the management terminal used in the Epic System.

56. The game odds, pay tables, rules, and help screens in the Falcon software being used by the Defendants are all duplicates of the Epic System. Artwork used by the Falcon software is identical or substantially similar to copyrighted art work owned by Epic. By way of example, below are side by side comparisons of images from the Epic System and from the Falcon software:

| The Epic System | Defendant's Falcon Software |
| --- | --- |





Case 1:15-cv-00252-CCE-LPA   Document 1   Filed 03/23/15   Page 15 of 30



57. Defendants' infringement of Epic's intellectual property rights harms Epic, as customers who might otherwise elect to license or use the Epic System may elect to license or use the infringing sweepstakes gaming systems and devices.

### FIRST CAUSE OF ACTION
### Copyright Infringement

58. Epic incorporates all foregoing paragraphs as if set forth fully herein.

59. Epic is the owner of the Epic Copyright Registrations.

60. Upon information and belief, none of the games in the Falcon software being used by Defendants were independently developed or invented by Defendants, but instead were illegally pirated or copied from the Epic System.

61. Defendants, without authority, have willfully, wantonly, have acted in conscious and intentional disregard of and indifference to the rights of Epic by, among other things, copying, reproducing, possessing, altering, selling, distributing, infringing, publicly displaying, disclosing, and/or otherwise using and participating in the unauthorized reproduction and display of copyrighted material belonging to Epic without the express or implied consent of Epic.

16

62. Defendants knew or reasonably should have known that the software and the works protected by the Epic Copyright Registrations that they were using were protected by copyright.

63. Defendants' infringement has been willful, intentional, and purposeful, in disregard of and with indifference to Epic's rights.

64. Defendants' conduct constitutes a violation of 17 U.S.C. §§ 501, *et seq.*

65. Defendants' infringing activities continue through the date of the filing of this complaint.

66. As a direct and proximate result of Defendants' copyright infringement, Epic has suffered, and is suffering, actual, immediate, and irreparable harm for which no adequate remedy exists at law. Unless immediately restrained and enjoined, Defendants will continue to engage in the acts complained of herein and, therefore, will continue to cause irreparable harm to Epic.

67. As a direct and proximate result of its wrongful conduct, Defendants have realized and will continue to realize profits and other benefits rightly belonging to Epic. Accordingly Epic is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c). Alternatively, at Epic's election, pursuant to 17 U.S.C. § 504(b), Epic is entitled to its actual damages plus Defendants' profits from infringement, to be proven at trial.

68. Epic is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

17

## SECOND CAUSE OF ACTION
### Trademark Infringement of Federally Registered Trademarks

69. Epic repeats and re-alleges the foregoing paragraphs of the Complaint as if set forth fully herein.

70. Epic owns the trademark registrations for the Lucky Duck Registered Logo and the Reel Cats Registered Trademark.

71. Defendants' uses of Epic's federally-registered Lucky Duck Registered Logo and Reel Cats Registered Trademark in commerce in conjunction with gaming systems are likely to cause confusion, mistake, or deception of consumers as to an affiliation, connection, or association of Defendants with Epic, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities with or by Epic, and such use therefore infringes Epic's trademarks. Such actions violate the provisions of 15 U.S.C. § 1114

72. Upon information and belief, Defendants' continued infringing conduct is knowing, intentional, and willful.

73. As a direct and proximate result of Defendants' trademark infringement, Epic has suffered, and is suffering, actual, immediate, and irreparable harm for which no adequate remedy exists at law. Unless immediately restrained and enjoined, Defendants will continue to engage in the acts complained of herein and, therefore, will continue to cause irreparable harm to Epic.

## THIRD CAUSE OF ACTION

18

**Federal Unfair Competition, False Designation of Origin, and False Advertising**

74. Epic repeats and re-alleges the foregoing paragraphs of the Complaint as if set forth fully herein.

75. The Epic Trademarks function as trademarks, are distinctive, and are protectable as common law trademarks as a result of distinguishing Epic's games from the games of others.

76. Prior to Defendants' actions, the Epic Trademarks have been used on the Epic System in commerce to distinguish those products, including by displaying the marks on gaming systems, and Epic has not abandoned such marks.

77. The Epic Trademarks are distinctive and, in addition to being inherently distinctive, and as a result of sales of gaming systems by Epic (and/or Epic's licensees and previous owners of the Epic Trademarks), the Epic Trademarks have developed and now have a secondary trademark meaning to purchasers and users of gaming systems so that they have come to be recognized by the relevant consuming public as indicating Epic as the source of such gaming systems and games.

78. Defendants have provided gaming systems and games to customers using identical or confusingly-similar representations of the Epic Trademarks.

79. Upon information and belief, Defendants acted knowingly and intentionally in adopting the Epic Trademarks and or confusingly-similar variations and has attempted to trade off the goodwill owned by Epic.

19

80. Defendants' actions constitute unauthorized use in commerce of a colorable variation of the Epic Trademarks in a manner that is likely to cause confusion as to source, sponsorship, or affiliation. Therefore, such actions constitute a violation of Epic's common law rights in the Epic Trademarks.

81. The foregoing acts and conduct by the Defendants constitute false designation of origin, passing off and false advertising in connection with products distributed in interstate commerce in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

82. Epic will suffer irreparable harm unless Defendants' unlawful conduct is enjoined. As a proximate result of Defendants' actions, Epic has suffered and will continue to suffer damage to its business, goodwill, reputation, profits and strength of the Epic Trademarks. The injury to Epic is ongoing, continuous and irreparable. A monetary award of damages alone cannot fully compensate Epic for its damages caused by Defendants, and Epic lacks an adequate remedy at law

**FOURTH CAUSE OF ACTION**
**Common Law Trademark Infringement and Common Law Unfair Competition**

83. Epic repeats and re-alleges the foregoing paragraphs of the Complaint as if set forth fully herein.

84. The Epic Trademarks function as trademarks, are distinctive, and are protectable as common law trademarks as a result of distinguishing Epic's games from the games of others.

20

85. Prior to Defendants' actions, the Epic Trademarks have been used on the Epic System in commerce to distinguish its products, including by displaying the marks on gaming systems, and has not abandoned such marks.

86. The Epic Trademarks are inherently distinctive, and as a result of sales of gaming systems by Epic (and/or Epic's licensees and previous owners of the Epic Trademarks), the Epic Trademarks have developed and now have a secondary trademark meaning to purchasers and users of gaming systems so that they have come to be recognized by the relevant consuming public as indicating Epic as the source of such gaming systems and games.

87. Defendants have provided gaming systems and games to customers using identical or confusingly-similar representations of the Epic Trademarks.

88. Upon information and belief, Defendants acted knowingly and intentionally in adopting the Epic Trademarks and or confusingly-similar variations and has attempted to trade off the goodwill owned by Epic.

89. Defendants' actions constitute unauthorized use in commerce of a colorable variation of the Epic Trademarks in a manner that is likely to cause confusion as to source, sponsorship, or affiliation. Therefore, such actions constitute a violation of Epic's common law rights in the Epic Trademarks.

90. Epic will suffer irreparable harm unless Defendants' unlawful conduct is enjoined. As a proximate result of Defendants' actions, Epic has suffered and will continue to suffer damage to its business, goodwill, reputation, profits and strength of the

21

Epic Trademarks. The injury to Epic is ongoing, continuous and irreparable. A monetary award of damages alone cannot fully compensate Epic for its damages caused by Defendants, and Epic lacks an adequate remedy at law

## FIFTH CAUSE OF ACTION
### Conversion

91. Epic incorporates all foregoing paragraphs as if set forth fully herein.

92. The infringing software being used by Defendants at the Store is the sole and exclusive property of Epic and was not conveyed or sold to Defendants.

93. Defendants has taken illegally and possessed the infringing software without the express or implied consent of Epic.

94. Defendants have exercised dominion and control over Epic's property without justification or excuse.

95. As the direct and proximate result, Epic has been damaged in an amount in excess of $25,000.00 to be proven at the trial of this matter.

## SIXTH CAUSE OF ACTION
### Misappropriation of Trade Secrets

96. Epic incorporates all foregoing paragraphs as if set forth fully herein.

97. The Epic System software, including all of its components not shown to a user, is not generally known or ascertainable by proper means. In particular, the source code that forms the core of all sweepstakes operations is protected from disclosure to even licensees of the System through security measures, including password protection.

22

98. The Epic System software is not generally known to others or readily ascertained by others using proper means.

99. The Epic System software derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use.

100. The Epic System software is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

101. Upon information and belief, Defendants have misappropriated the Epic System's software for its own use and distribution in violation of the North Carolina Trade Secrets Protection Act, N.C. Gen. Stat. § 66-152.

102. Upon information and belief, by its conduct described above and as will be proven via discovery in this action, Defendants have wrongfully misappropriated these trade secrets.

103. Under the North Carolina Trade Secrets Protection Act, N.C. Gen. Stat. § 66-152 *et seq.*, Epic has and is entitled to a civil remedy at both law and equity against Defendants for their misappropriation of Epic's trade secrets.

104. In accordance with N.C. Gen. Stat. § 66-155(1), Defendants knew that Epic's formulas, methodologies, and other confidential information, were trade secrets as defined in N.C. Gen. Stat. § 66 152(3).

23

105.     Pursuant to N.C. Gen. Stat. § 66-154(a), the Court may enjoin Defendants, and those in concert with Defendants, from using and disclosing Epic's trade secrets and order Defendants to return Epic's trade secret information and materials.

106.     Pursuant to N.C. Gen. Stat. § 66-154(b), Epic may recover damages from Defendants, jointly and severally, as measured by Epic's economic loss and lost profits or by Defendants' unjust enrichment, whichever is greater, caused by Defendants' misappropriation of Epic's trade secrets.

107.     Defendants' misappropriation was willful and malicious.  Defendants have no legal claim to Epic's trade secrets and had no legal justification for obtaining or using those secrets.

108.     Pursuant to N.C. Gen. Stat. § 66-154(c) and (d), Epic is entitled to punitive damages and attorneys' fees due to Defendants' willful and malicious misappropriation.

109.     The aforesaid unlawful conduct of Defendants has caused financial damages to Epic in excess of $25,000.00 and Epic continues to suffer immediate and irreparable harm to its business and goodwill for which it has no full, complete and adequate remedy at law.

110.     Unless immediately restrained and enjoined, Defendants will continue to engage in the acts complained of herein and, therefore, will continue to cause irreparable harm to Epic.

### SEVENTH CAUSE OF ACTION
**Unfair and Deceptive Trade Practices**

24

111. Epic incorporates all foregoing paragraphs as if set forth fully herein.

112. Defendants have engaged in acts, omissions and practices, as described above and otherwise, that were unfair and deceptive and that offend established public policy.

113. The acts, omissions and practices of Defendants described above, are unfair, immoral, unethical, oppressive, unscrupulous and substantially injurious to competition and specifically injurious to Epic.

114. Defendants' acts, omissions and practices, as alleged above and otherwise, constitute unfair or deceptive acts or practices in or affecting commerce in violation of N.C. Gen. Stat. § 75-1.1 et seq.

115. As a result of Defendants' unfair and deceptive acts and practices, Epic has been actually damaged in this State in an amount in excess of $25,000.00 and is entitled to recover same from Defendants.

116. Pursuant to N.C. Gen. Stat. §§ 75-16 and 75-16.1 and other applicable law, Epic is entitled to have such damages trebled and to an award of costs and reasonable attorney's fees.

117. As a proximate result of Defendants' unfair and deceptive acts and practices and of Defendants' other wrongful conduct described otherwise herein, Epic is also entitled to an accounting of Defendants' improper gains from their wrongful conduct and to an Order requiring disgorgement of such gains obtained at the expense of Epic and its rights.

25

## EIGHTH CAUSE OF ACTION
### Injunctive Relief

118. Epic incorporates all foregoing paragraphs as if set forth fully herein.

119. There is a strong likelihood that Epic will ultimately prevail on the merits of this matter.

120. Epic has suffered and will continue to suffer substantial financial losses as a result of Defendants' conduct as alleged herein.

121. The relative equities between the parties are best served by permanently enjoining Defendants' actions using the Epic System.

122. Accordingly, Epic demands injunctive relief to prevent the continued use of pirated software by Defendants in the operation of its business.

WHEREFORE, Plaintiff Epic Tech, LLC respectfully prays the Court as follows:

1. That it have and recover of the Defendants judgment in excess of $25,000.00 for all of its actual damages compensatory, consequential, statutory and special damages including, without limitation, its lost profits, loss of goodwill and dilution, as provided by law, together with pre- and post-judgment interest;

2. That its actual damages be trebled pursuant to N.C. Gen. Stat. § 75-16;

3. That it have and recover of the Defendants the maximum statutory damages pursuant to 17 U.S.C. § 504(c) or alternatively, pursuant to 17 U.S.C. § 504(b), it have and recover its actual damages plus Defendants' profits from infringement, to be proven at trial;

4.    An assessment of costs, including reasonable attorney fees, pursuant to 17 U.S.C. § 505, N.C. Gen. Stat. § 75-16.1, and other applicable law;

5.    A grant of preliminary injunction restraining and enjoining Defendants, their agents, servants, employees, confederates, attorneys, and any person acting in concert or participation with them from directly or indirectly: (i) copying, reproducing, marketing, distributing, selling or otherwise using in any way, any reproduction, counterfeit, copy, or colorable imitation of the Epic System software, and (ii) operating any machines or online video or gaming systems or programs that use the Epic System software;

6.    A grant of permanent injunction restraining and enjoining Defendants, their agents, servants, employees, confederates, attorneys, and any person acting in concert or participation with them from directly or indirectly: (i) copying, reproducing, marketing, distributing, selling or otherwise using in any way, any reproduction, counterfeit, copy, or colorable imitation of the Epic System software, and (ii) operating any machines or online video or gaming systems or programs that use the Epic System software;

7.    An order, under 15 U.S.C. § 1116 and 17 U.S.C. §§ 503-505, requiring Defendants to deliver to Plaintiff, or otherwise requiring destruction or impoundment of, all material, games, products, programs, and the like protected by Epic's registered copyrights and currently in Defendant's possession, custody or control;

27

8.   All remedies as provided in 15 U.S.C. §§ 1117, 1118, and 1120;

9.   An accounting for damages;

10.  An award of all monies unjustly received by Defendants as a result of the acts alleged herein;

11.  The imposition of a constructive trust on all of Defendants' ill-gotten gains;

12.  Interest as provided by law; and

13.  Such other and further relief as this Court deems just and proper.

This the 23ʳᵈ day of March, 2015.

/s/ Donald R. Pocock
Donald R. Pocock, NC Bar No. 29393
Cassandra L. Crawford, NC Bar No. 45396
Attorney for Plaintiff Epic Tech, LLC
NELSON MULLINS RILEY & SCARBOROUGH
LLP
380 Knollwood Street, Suite 530
Winston-Salem, NC 27103
Telephone: 336.774.3324
Fax: 336.774.3376
E-mail: donald.pocock@nelsonmullins.com

Of Counsel:
Ashley B. Summer
NELSON MULLINS RILEY & SCARBOROUGH LLP
104 South Main Street / Ninth Floor
Post Office Box 10084 (29603-0084)
Greenville, SC 29601
Telephone: 864-250-2214
Fax: 864-250-2394
E-Mail: ashley.summer@nelsonmullins.com

_____

## CORPORATE VERIFICATION

Jason Queen, being duly sworn, deposes and says: That he is the Director of Information Technology for Plaintiff, Epic Tech, LLC; that he has read the foregoing Complaint, and knows the contents thereof, and that the same is true of his own knowledge, except as to the matters therein stated upon information and belief, and as to those, he believes it to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 21st day of March, 2015.

$\overline{JA}$

30